UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| MELISSA BUCHANAN-RUSHING, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-2434-B |
| | § | |
| CITY OF ROYSE CITY, TEXAS | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination action arising out of Plaintiff Melissa Buchanan-Rushing's employment with the City of Royse City, Texas. Before the Court is Defendant City of Royse City's Motion for Summary Judgment (doc. 39), Defendant City of Royse's Objections to Plaintiff's Response to Defendant's Motion for Summary Judgment (doc. 51), and Plaintiff Melissa Buchanan-Rushing's Motion for Leave to File Sur-Reply to Defendant's Reply (doc. 52). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Objections to Plaintiff's Response are **OVERRULED**. Plaintiff's Motion for Leave to File Sur-Reply is **GRANTED**.

### I.

### BACKGROUND[1]

Melissa Buchanan-Rushing ("Rushing") was hired by the City of Royse City ("City") as a

---

[1] The background facts are derived from undisputed facts gleaned from the parties' court papers. Where there may be a dispute over a stated fact the Court has so indicated by claiming the fact as one stated by that party to be true.

- 1 -

police officer on February 5, 2007. (Def.'s Mot. Summ. J. ¶2) Beginning on January 8, 2008, the police department assigned Rushing to work as a School Resource Officer ("SRO") at Royse City Middle School. (Def.'s Mot. Summ. J. ¶6) SROs are responsible for protecting students, teachers, and staff on campus, which often requires intervening in fights, making arrests, and confiscating weapons. (Def.'s Mot. Summ. J. ¶6)

On March 4, 2008, Rushing was placed on light duty by her neurologist. (Def.'s Mot. Summ. J. ¶7) On April 23, 2008, Rushing's neurologist issued a note stating that her light-duty restrictions would expire on August 20, 2008. (Pl.'s Resp. ¶19) On June 10, 2008, while still on light duty for reasons unrelated to her pregnancy, Rushing told Police Chief Tom Shelton ("Chief Shelton") that she was pregnant and intended to take leave under the Family Medical Leave Act ("FMLA") to have her baby sometime near the end of 2008. (Def.'s Mot. Summ. J. ¶8) In an email sent July 10, 2008, Chief Shelton told Rushing she would resume her duties as an SRO after her pregnancy, but that Rushing would be replaced by another SRO until that time. (Pl.'s Resp. to Def.'s Mot. Summ. J. ¶22)

On August 19, 2008, Chief Shelton placed Rushing on involuntary medical leave. (Def.'s Mot. Summ. J. ¶12) She submitted a letter indicating she was medically able to continue working as of August 20, 2008, but her requests to return to full-duty status were denied by City Attorney Jason Day, Executive Director of the City's Economic Development Corporation, and Sargent Rick Darby ("Sargent Darby") of the City's Police Department. (Def.'s Mot. Summ. J. ¶12) Rushing asserts that the primary reason she was denied a return to full-time status was her pregnancy. (Pl.'s Original Pet. ¶15)

In October of 2008, Rushing filed an internal complaint regarding her continued light-duty employment status. (Pl.'s Resp. ¶31) From October to December, 2008, the police department

allowed Rushing to work part-time doing clerical work. (Def.'s Mot. Summ. J. ¶15) However, when Rushing applied for FMLA leave on December 8, 2008 to have her baby, her request was denied. (Def.'s Mot. Summ. J. ¶17)

Rushing filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on April 1, 2009 alleging discrimination based on sex and disability. (Pl.'s Resp. ¶15) On June 24, 2009, the City's Human Resource Office filed a complaint against Rushing stating that she had been on unpaid medical leave for more than six months. (Def.'s Mot. Summ. J. ¶19) Rushing responded to the complaint on July 1, 2009, but the city terminated her employment later that day. (Def.'s Mot. Summ. J. ¶20)

Rushing filed this action on December 22, 2009, asserting causes of action for employment discrimination and retaliation under Title VII and the Texas Labor Code, for violation of rights under the Family Medical Leave Act, for discrimination under the Americans with Disability Act, and for violations of the equal protection clause under the Fourteenth and Fifth Amendments to the United States Constitution. In her Response to Defendant's Motion for Summary Judgment, Rushing voluntarily dismissed her claims arising under the Americans with Disability Act and the equal protection clause. (Pl.'s Resp. ¶ 3).

## II.

## LEGAL STANDARDS

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify

which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' …by 'conclusory allegations,'…by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr* (200 F.3d 291, 302 (5th Cir. 2000). The court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255. In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

## III.

## ANALYSIS

As an initial matter, the Court addresses the City's Objections to Rushing's Response (doc.

51) and Rushing's Motion for Leave to File Sur-Reply (doc. 52). In addition to its Reply, the City filed a litany of purported objections to Rushing's Response. Although labeled "objections," these statements are more accurately described as an extension of the City's summary judgment arguments. The City did not seek leave to file a sur-reply to its Motion, and such a motion would likely have been denied because the arguments presented appear redundant. Accordingly, the Court **OVERRULES** the City's objections.

Rushing, on the other hand, seeks leave to file a Sur-Reply to respond to new arguments raised in the City's Reply (doc. 50). In its Reply, the City argues for the first time that Rushing had a high-risk pregnancy, and that the high-risk nature of her pregnancy disqualified her from performing the duties of a full-time officer. (Def.'s Reply 1) A party who bears "'the burden on a particular matter will normally be permitted to open and close the briefing.'" *Springs Indus., Inc. v. Am. Motorists Ins. Co., et al.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991)(citations omitted). The opposing party must be given a meaningful opportunity to file an additional response in those instances where additional arguments and supporting materials– in fairness– should be considered by the court despite being raised for the first time in a reply brief. *Id.* at 240. Accordingly, the Court **GRANTS** Rushing's Motion for Leave to File Sur-Reply.

The Court next turns to the City's Motion for Summary Judgment as to Rushing's discrimination, retaliation, and FMLA claims.

*A. Pregnancy Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 amended Title VII to state that "[t]he terms 'because of sex' or 'on the basis of sex' include,

but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions...." 42 U.S.C. §2000e(k). To prevail on a pregnancy discrimination claim, the plaintiff must establish a *prima facie* case showing "(1)she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611(5th Cir. 2007). Alternatively, the plaintiff may meet her burden on the fourth element by showing she was replaced by someone who is not a member of the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)(footnote omitted). At summary judgment, the plaintiff must establish her *prima facie* case by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

      A plaintiff may establish her *prima facie* case by offering either direct or circumstantial evidence of discrimination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)(citations omitted). Direct evidence is evidence which "if believed, proves the fact [of intentional discrimination] without inference or presumption." *Portis v. First Nat. Bank of New Albany, Miss.* 34 F.3d 325, 328 (5th Cir. 1994)(citing *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). Where the evidence offered is circumstantial, the Court uses the *McDonnell Douglas* burden-shifting framework to analyze the plaintiff's claim. *See Grimes v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 137, 140 (5th Cir. 1996); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). Once the plaintiff successfully establishes her *prima facie* case, there is a presumption of discrimination, and the burden

then shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse action. *Id.* Such a showing dissolves the presumption of discrimination, and the burden shifts back to the plaintiff to demonstrate that the reason articulated was only a pretext for discrimination. *Id.* at 804-05.[2]

In its Motion, the City argues that Rushing fails to establish a *prima facie* case of discrimination. It is undisputed that Rushing was a member of the protected class of pregnant women. It is also undisputed that Rushing suffered adverse employment actions when she was involuntarily placed on medical leave in August of 2008, and when her employment was terminated in July of 2009. Thus, only the second and fourth elements of Rushing's *prima facie* case are contested; the parties disagree as to whether Rushing was qualified for the SRO position, and whether Rushing was treated less favorably than other similarly situated employees.

First, the City argues Rushing cannot establish a *prima facie* case of discrimination because

---

[2] Rushing contends that two comments made by her supervisors constitute direct evidence of discrimination. Specifically, Rushing offers evidence of an email from Chief Shelton stating that she could not be placed on active duty at the school "for obvious reasons for awhile." Rushing offers evidence that Chief Shelton confirmed during a deposition that Rushing's pregnancy was the "obvious reason" to which he referred. (App. to Pl.s' Resp. 296) Rushing's other "direct evidence" is her statement that, when she met with Acting City Manager Larry Lott ("Lott") on August 22, 2008 to seek reinstatement to full-time status, Lott asked, "Do you mean to tell me, pregnant, that you want to put on your uniform and get in a patrol car and go patrol streets at night?" (Dep. Rushing 174:3-6) "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citation omitted). Where an employee offers direct evidence of discrimination, the burden shifts to the employer "to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Id.* (citation omitted). Direct evidence is rare, and ordinarily plaintiffs are relegated to the *McDonnell Douglas* circumstantial evidence method of establishing their *prima facie* case. *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 180 n. 4 (5th Cir. 1999). Assuming, without deciding, that Rushing's description her evidence as "direct" is correct, the Court nonetheless utilizes the *McDonnell Douglas* framework in this summary judgment analysis for two reasons. First, Rushing's "direct evidence" pertains only to her "involuntary leave" claim as opposed to her wrongful termination claim. Second, the bulk of Rushing's evidence on both claims is circumstantial. This circumstantial evidence, if taken as true, defeats the Defendant's summary judgment with respect to the *prima facie* case.

she was not qualified to be an SRO. (Def.'s Br. Mot. Summ. J. 7) The City requires that the SRO position must be filled by a full-duty officer authorized to use a firearm. (Def.'s Br. Mot. Summ. J. 11-12) A General Order issued by the City of Royce requires officers to undergo firearms qualification twice each year. (App. to Def.'s Mot. Summ. J. 110) The State of Texas only requires officers to undergo firearms qualification once each year, and that qualification requirement can be waived upon request. TEX. OCC. CODE ANN. § 1701.355(a) (West 2009); 37 TEX. ADMIN. CODE § 217.21(a)(1)(West 2011). Rushing most recently completed her firearms qualification in October of 2007. (App. to Def.'s Br. Mot. Summ. J. 94)

A neurologist placed Rushing on light duty for reasons unrelated to her pregnancy on March 4, 2008, prohibiting Rushing from using a firearm or answering calls "until further notice." (App. to Def.'s Mot. Summ. J. 96) A subsequent note from Rushing's neurologist stated that she must remain on light duty for a period of sixteen weeks beginning April 23, 2008. (App. to Def.'s Mot. Summ. J. 98) The City maintains that because Rushing was never formally released to work as a full-duty officer, she was not qualified for the SRO position at any time after March 4, 2008. (Def.'s Br. Mot. Summ. J. 9) The City's only support for this argument is Chief Shelton's affidavit, which states that it is his "general practice" to require a note of release from the same doctor who issued the light duty note. (Aff. Shelton ¶10).

In response, Rushing concedes she was required to be on light duty until August 19, 2008, but maintains that she was fully qualified to resume full-duty responsibilities after sixteen weeks had passed. (Pl.'s Resp. ¶20; App. to Def.'s Mot. Summ. J. 98) Additionally, Rushing points to Chief Shelton's deposition in which he admits that under state law, Rushing was qualified to work with a firearm. (Shelton Dep. 79:16-24) Based on this evidence, a reasonable jury could conclude that

Rushing was qualified to resume full-duty responsibilities after August 19, 2008.

Alternatively, the City argues that Rushing could not qualify to use her firearms due to her pregnancy. The Pregnancy Discrimination Act prohibits employers from denying women opportunities out of concern for the fetus's health. *See Int'l Union, et. al., v. Johnson Controls, Inc.*, 499 U.S. 187, 211, 111 S.Ct. 1196 (1991) (citing *Muller v. Oregon*, 208 U.s. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) (recognizing that "[c]oncern for a woman's existing or potential offspring historically has been the excuse for denying women equal employment opportunities[,]" and holding that the PDA was intended to prevent employers from implementing policies based on those concerns.) However, a plaintiff cannot establish a *prima facie* case of discrimination where a woman's pregnancy renders her physically unable to perform essential functions of her job. *See, e.g., Appel v. Inspire Pharm., Inc.*, 712 F.Supp.2d 538 (N.D. Tex. 2010).

In its Reply, the City maintains that Rushing told Chief Shelton her pregnancy was a high-risk pregnancy, and that she requested light duty work due to the high-risk nature of her pregnancy. (Def.'s Reply 1) Chief Shelton admittedly does not recall the specifics of this conversation. (Dep. Shelton 39:8-13) Rushing recalls discussing with Chief Shelton the fact that her pregnancy was likely to involve a high risk *delivery*, but states that her pregnancy was not a high risk pregnancy. (Pl.'s Sur-Reply 2; Dep. Rushing 159:6-17) The City also presents a letter from Rushing's obstetrician dated October 24, 2008, stating that Rushing "may work full time duty less qualification with firearms" until after having her baby. (App. to Def.'s Mot. Summ. J. 100) The City argues that despite the note's date of issue, it retroactively applies to Rushing's entire pregnancy. (Def.'s Br. Mot. Summ. J. 10) Rushing testified that her obstetrician had concerns about lead exposure from the indoor firing range, but that the note only cautioned against firearms qualification, not carrying a firearm for full-

time duty. (Dep. Rushing 149:16-22) Additionally, Rushing offers evidence that she volunteered to undergo firearms qualification in spite of the warning from her doctor. (Pl.'s Resp. ¶10; Aff. Rushing 3-4)

The City has presented no evidence that Rushing was physically incapable of working full-time as an SRO at the time she was terminated. Rushing was placed on involuntary leave in August of 2008, but her firearms qualification did not expire under state law until October, 2008. (App. to Def.'s Br. Mot. Summ. J. 94) A doctor's note cautioning Rushing about the risks of undergoing firearms qualification while pregnant is insufficient to establish that Rushing was qualified for the position, particularly in light of Rushing's insistence that she was willing to undergo firearms qualification and take any other steps necessary to resume full-time employment as an SRO. (Aff. Rushing 3-4) Taking all evidence in a light most favorable to Rushing, the Court finds that there is at least a genuine issue of material fact as to whether she was qualified to continue working as an SRO.

In its Motion, the City also argues there is no evidence Rushing was treated less favorably than other similarly situated employees.[3] Rushing offers evidence that Sargent Darby was allowed

---

[3] The parties' briefings focus on whether Rushing was treated less favorably than other similarly situated employees. However, as with other forms of intentional discrimination, providing evidence of "similarly situated employees" or that plaintiff was "replaced by an individual outside the protected group" are not the only methods by which a plaintiff may discharge her burden of establishing a *prima facie* case of intentional discrimination. *See Abdu-Brisson v. Delta Airlines*, 239 F.3d 456, 467-68 (2d Cir. 2001) ("[A] showing of disparate treatment, while a common and especially effective method of establishing the inference of discriminatory intent necessary to complete the *prima facie* case, is only one way to discharge that burden.") Rushing may also establish the fourth element of her *prima facie* case by showing that she was otherwise discharged because of her sex. *See Lawson v. S. Components, Inc.*, 410 Fed. Appx. 833, 835 (5th Cir. 2011) (citing *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)) (holding that the fourth element of plaintiff's *prima facie* case may be satisfied by showing she was "otherwise discharged because of her race."); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (citation omitted) (recognizing that plaintiff may establish a *prima facie* case of discrimination by showing he "was otherwise discharged because

to continue working as an SRO after being placed on light duty due to injury. (Aff. Darby ¶¶3-4) While on light duty, Sargent Darby was not in uniform and not allowed to carry a firearm, but he continued to hold his position as an SRO. (Aff. Darby ¶3) The City's primary explanation for treating Sargent Darby differently from Rushing is that at the time Sargent Darby was injured, the City was not facing severe budget problems. (Def.'s Reply 8). The City also contends that Sargent Darby had different responsibilities and more experience than Rushing. (Def.'s Reply 7-8) However, because both Sargent Darby and Rushing were employed in the same position–as SROs– the Court finds there is a genuine issue of material fact as to whether Rushing was treated less favorably than other similarly situated employees.

Because Rushing has established a *prima facie* case of discrimination, the City bears the burden of establishing a legitimate, non-discriminatory reason for the adverse employment actions. If the City makes such a showing, the burden shifts to Rushing to prove the City's proffered non-discriminatory reasons are pretextual. The City offers two justifications for terminating Rushing's full-time employment. First, the City argues that Rushing was placed on medical leave because she was medically restricted from performing the duties required of an SRO. (Def.'s Br. Mot. Summ. J. 17-18) As discussed above, Rushing has presented enough evidence for a reasonable jury to conclude she was qualified to retain her position. Second, the City argues that Rushing had exhausted all available leave, and budget cuts necessitated terminating her position. (Def.'s Br. Mot. Summ. J. 18) Assuming *arguendo* that this is a legitimate, non-discriminatory reason for termination, the City's

---

of his age.") Thus, even if Rushing's evidence as to whether she was treated less favorably than similarly situated employees is weak, the City would not be entitled to summary judgment because Rushing has presented sufficient evidence for a reasonable jury to conclude that she was otherwise discharged because of her pregnancy.

motion for summary judgment must be denied. In an email, Chief Shelton told Rushing she was being placed on light duty until after having her baby. (App. to Pl.'s Resp. 296) Acting City Manager Lott questioned whether Rushing should be on patrol and in uniform while pregnant. (Dep. Rushing 174:3-6). Based on this evidence, Rushing argues that the City's actions were merely a pretext for discrimination. Taking all evidence as true, the Court finds that a reasonable jury could conclude that Rushing's pregnancy was the primary motivation behind the decision to place her on involuntary leave and ultimately terminate her position.

For these reasons, the City's Motion for Summary Judgment with respect to the sex discrimination claim is **DENIED.**

*B. Retaliation*

In addition to its prohibitions against discrimination, Title VII makes it unlawful for an employer to retaliate against an employee for opposing any unlawful discrimination practice. *See* 42 U.S.C. § 2000e-3. Under the *McDonnell Douglas* burden shifting analysis, a plaintiff must first set out a *prima facie* case of retaliation, showing (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

A plaintiff engages in a "protected activity" when he has either (1) "opposed any practice made an unlawful employment practice by [Title VII], or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). To show that she opposed an unlawful employment practice, a plaintiff must demonstrate that she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Turner v.*

*Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

The term "adverse employment action" in the context of retaliation claims is interpreted to mean any action a reasonable employee would find materially adverse so as to discourage the making or supporting of a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (U.S. 2006); *King v. Louisiana*, 294 F. App'x 77, 84 (5th Cir. 2008). Further, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)(citing *Armstrong v. City of Dallas*, 997 F.2d 62, 27 (5th Cir. 1993)).

Once the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for the adverse action. *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant successfully meets this burden, the presumption of a *prima facie* case is rebutted and the plaintiff must then establish, by a preponderance of the evidence, either that the employer's articulated reason is a pretext for retaliation, or that the employer's reason, while true, "is but one of the reasons for its conduct, another of which was discrimination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 322-323 (5th Cir. 2005). If the employee proves that discrimination was one of multiple motivating factors in the employment decision, "the burden shifts to the employer to prove it would have taken the same action despite the discriminatory animus." *Id.* at 333.

The City assumes, *arguendo*, that Rushing is able to establish a *prima facie* case of retaliation, so the Court will do the same for the purposes of its retaliation analysis.

The Court next considers whether the City has established a legitimate, non-retaliatory

reason for Rushing's termination. The City argues that Rushing had used all available leave, but remained physically unable to return to work. (Def.'s Br. Mot. Summ. J. 21) Even if the Court grants that this is a legitimate, non-retaliatory reason, the City's Motion must be denied. Rushing has presented sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that retaliation was a motivating factor in the decision to terminate her position as SRO. Rushing demanded reinstatement to full-duty and back pay on October 10, 2008, and filed an EEOC complaint alleging pregnancy discrimination on April 1, 2009. (Pl.'s Resp. to Def.'s Mot. Summ. J. ¶31; Pl.'s Resp. ¶15) Although Rushing was not formally terminated until July 1, 2009, the evidence shows that the decision to terminate her position was made much earlier. Specifically, Chief Shelton testified that in March or April he made the decision Rushing would soon be terminated. (Shelton Dep. 95:15-23) Rushing's leave did not expire until June 8, 2009. (*See* App. to Pl.'s Response 305) Based on this evidence, as well as the close proximity between Rushing's EEOC complaint and her termination, a reasonable jury could conclude that the reasons offered by the City for Rushing's termination were pretextual. Accordingly, the Court finds that the City's motion for summary judgment with respect to the retaliation claim must be **DENIED.**

C. *FMLA Interference*

In her Complaint, Rushing alleges that the city violated her rights under the Family Medical Leave Act ("FMLA") by forcing her to take leave beginning in August of 2008, which in turn rendered her ineligible for FMLA leave when she was placed on bed rest in December of 2008.

To prevail on her FMLA claim, Rushing must establish 1) that she is an eligible employee; 2) that the defendant is an employer as defined by the FMLA; 3) that she is entitled to leave under the FMLA; 4) that she gave notice of the intent to take leave; and 5) that she was denied benefits

by her employer. *Sterling v. City of New Rds.*, 2010 WL 55333, at *3 (M.D. La. Jan. 6, 2010)(citing *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009)). An employee is eligible for FMLA benefits when she (1) has been employed by the employer for at least twelve months; and (2) has worked for at least 1,250 hours during that twelve-month period. 29 U.S.C. § 2611(2).

In its Motion, the City argues Rushing was not an eligible employee under FMLA as of December 8, 2008. (Def.'s Mot. Summ. J. ¶17) The City argues that Rushing did not work the requisite 1,250 hours in the twelve months preceding her request. (Def.'s Mot. Summ. J. ¶17) The City submitted evidence establishes that Rushing only worked 796.25 hours from in the twelve months leading up to December 8, 2008. (Def.'s Br. Mot. Summ. J. ¶11) In response, Rushing argues that she would have met the hours requirement if the city had not placed her on involuntary leave in the fall.

Arguments similar to Rushing's have been rejected in other cases. The plaintiff in *Schutze v. Financial Computer Software* argued that "he would have qualified as an FMLA eligible employee but for Defendant's termination…" of his employment. *Schutze*, No. 3:04-CV-0276-H, 2004 WL 2058507, *3 (N.D. Tex. Sept. 14, 2004). The court in *Schutze* rejected this argument, finding that "[c]ongress' 'clear statutory prerequisites for bringing an FMLA claim…did not provide for waiver of the minimum eligibility requirements when an employer has taken some action that allegedly precludes the employee from becoming statutorily eligible for protection under the Act." *Id.* (citing *Brown v. DaimlerChrysler Corp.*, No. CIV.A. 3:99-CV-1286-D, 1999 WL 766021 at * 2(N.D. Tex. Sept. 24, 1999)). Similarly, in *Love v. City of Dallas*, plaintiffs argued that the city violated their FMLA rights by involuntarily placing them on FMLA leave. *Love v. City of Dallas*, No. 3:96-CV-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997). The *Love* court held that the plaintiffs

had no standing to sue under the FMLA because "such an action is really just an adverse employment action, for which the plaintiff may have a cause of action under another statute." *Id.*

Rushing asks the Court to give her credit for hours she would have worked if allowed to continue her position as SRO after August 20, 2008. (Pl.'s Resp. 32). The Court finds that such a calculation is highly speculative, and lacks support from either the statutory language or the relevant case law.[4] Because Rushing fails to raise a genuine issue of material fact as to whether she was eligible for FMLA leave, the Court **GRANTS** the City's Motion for Summary Judgment with respect to the FMLA claim.

## IV.

## CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's FMLA claim. Because material issues of fact remain as to Rushing's discrimination and retaliation claims under Title VII, the Court **DENIES** Defendant's Motion for Summary Judgment with respect to those claims.

---

[4]The sole case Rushing cites in support of her argument is an unpublished Sixth Circuit decision, *Stimpson v. United Parcel Serv.*, 351 Fed. Appx. 42, 2009 U.S. App. LEXIS 24245 (6th Cir. Nov. 3, 2009). The Court in *Stimpson* held there was an issue of triable fact on the number of hours worked because the method used to calculate hours that would have been worked by the plaintiff was fully addressed in an earlier arbitration proceeding. *Id.* at *13. By contrast, Rushing asserts that she deserves credit for a 40-hour work week for each week that she was on forced leave. (Pl.'s Resp. ¶14) Rushing's calculation method lacks the factual basis and careful analysis offered by the plaintiff in *Stimpson*.

SO ORDERED.

SIGNED June 7, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE